ACCEPTED
15-25-00038-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/28/2025 12:20 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00038-CV**

# In the Court of Appeals
# for the Fifteenth Judicial District
# Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
5/27/2025 12:20:42 PM
CHRISTOPHER A. PRINE
Clerk

UNIVERSITY OF TEXAS AT ARLINGTON,

*Appellant,*

*v.*

JAMES MCMERCHANT,

*Appellee.*

On Appeal from Cause No. 236-337930-22, in the 236th
Judicial District Court of Tarrant County, Texas

## APPELLANT'S BRIEF

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief for General Litigation Division

BRIANNA M. KROMINGA
Assistant Attorney General
Brianna.Krominga@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(214) 290-8884 | FAX: (512) 320-0667

## Identity of Parties and Counsel

**Appellant**
**(Defendant in Trial Court):**          University of Texas at Arlington

**Counsel for Appellant:**               Brianna M. Krominga
                                         Lead Attorney
                                         Texas Bar No. 24103252
                                         Assistant Attorney General
                                         Office of the Attorney General
                                         General Litigation Division
                                         P.O. Box 12548
                                         Austin, Texas 78711
                                         (214) 290-8884 – Phone
                                         (512) 320-0667 – Fax
                                         brianna.krominga@oag.texas.gov

**Appellees**
**(Plaintiff in Trial Court):**          James McMerchant

**Counsel for Appellees:**               Ali Crocker
                                         Crocker Russell & Associates
                                         200 W. Oak Street
                                         Mansfield, Texas 76063
                                         Ph: (817) 482-6570
                                         Fax: (682) 232-1850
                                         alic@cralawfirm.com

# Table of Contents

Identity of Parties and Counsel ...................................................................................ii
Table of Contents .......................................................................................................iii
Index of Authorities ...................................................................................................iv
Statement of the Case ................................................................................................ vi
Statement Regarding Oral Argument .......................................................................vii
Issues Presented ........................................................................................................viii
Introduction ................................................................................................................1
Statement of Facts .......................................................................................................2

    I.      Factual Background ........................................................................................2
    II.    Procedural Background ..................................................................................4

Summary of the Argument ..........................................................................................5
Standard of Review .....................................................................................................5
Argument ....................................................................................................................7

    I.      The Trial Court Erred in Denying the University's Plea to the Jurisdiction Because the Trial Court Lacked Jurisdiction Over McMerchant's Title VII Claim. .............................................................7

      A. Plaintiff failed to exhaust his administrative remedies. .............................7
      B. Plaintiff cannot rely on the continuing violation doctrine to resurrect his procedural failures. ............................................................ 11

Prayer .......................................................................................................................12
Certificate of Service .................................................................................................13
Certificate of Compliance ........................................................................................ 13

# Index of Authorities

**CASES**

*Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives,*
    647 S.W.3d 681 (Tex. 2022)............................................................................ 6

*BNSF Ry. Co. v. Phillips,*
    485 S.W.3d 908 (Tex. 2015)............................................................................ 8

*Chambers-Liberty Cnts. Navigation Dist. v. State,*
    575 S.W.3d 339 (Tex. 2019) ........................................................................... 7

*Fort Bend Cnty., Tex. v. Davis,*
    587 U.S. 541 (2019) ................................................................................... 1, 8

*Heckman v. Williamson County,*
    369 S.W.3d 137 (Tex. 2012) ........................................................................... 6

*Jefferson v. Christus St. Joseph Hosp.,*
    374 Fed. Appx. 485 (5th Cir. 2010) .............................................................. 10

*Klumb v. Houston Mun. Emps. Pension Sys.,*
    458 S.W.3d 1 (Tex. 2015) ............................................................................... 5

*Lazarides v. Farris,*
    367 S.W.3d 788 (Tex.App.—Houston [14th Dist.] 2012, no pet.)..................... 7

*Matzen v. McLane,*
    659 S.W.3d 381 (Tex. 2021) ........................................................................... 6

*McClain v. Lufkin Indus.,*
    519 F.3d 264 (5th Cir. 2008) ....................................................................... 10

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
    372 S.W.3d 629 (Tex. 2012)............................................................................ 6

*National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002). ............................ 9, 10, 11, 12

*Tex. Dep't of Parks & Wildlife v. Miranda,*
    133 S.W.3d 217 (Tex. 2004) ........................................................................... 6

*Thomas v. Long,* 207 S.W.3d 334 (Tex. 2006).................................................................. 7

*Town of Shady Shores v. Swanson,*
  590 S.W.3d 544 (Tex. 2019) ............................................................................. 6

*United Indep. Sch. Dist. v. Mayers,*
  665 S.W.3d 775 (Tex. App.—San Antonio 2023, no pet.) ..................................... 1, 8

*WalMart Stores, Inc. v. Davis,*
  979 S.W.2d 30 (Tex. App.—Austin 1998, pet. denied). ....................................... 12

## STATUTES

42 U.S.C. § 2000e-2(a).......................................................................................... 7
42 U.S.C. § 2000e-3(a).......................................................................................... 7
42 U.S.C. § 2000e-5(b) ...................................................................................... 1, 8
42 U.S.C. § 2000e-5(e)(1). ................................................................................. 1, 8
Tex. Gov't Code § 311.034 ................................................................................ 1, 8

## OTHER AUTHORITIES

U.S. Equal Employment Opportunity Commission, Time Limits for Filing a Charge,
  https://www.eeoc.gov/time-limits-filing-charge (last visited May 27, 2025). ................... 1, 11

# Statement of the Case

*Nature of the Case*: In June 2015, Plaintiff was hired by the University of Texas at Arlington (the "University") as a Warehouse Worker III. In 2017, another individual with the classification of Warehouse Worker III and receiving the same pay as Plaintiff, applied for and was offered a new position, Coordinator I, which is a higher graded position with additional responsibilities. This promotion also included a pay raise. Plaintiff did not apply for this position. In September 2020, at his request, Plaintiff's position was reclassified as a Mail Carrier II and his salary was increased to $30,000. In January 2021, filed a charge with the EEOC alleging discrimination based on the 2017 promotion of his colleague, for which he did not apply. He now sues the University alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

*Course of Proceedings*: Defendant filed its Plea to the Jurisdiction and Motion for Summary Judgment on February 26, 2024. CR.19-81. On February 29, 2024, Defendant's Plea was noticed to be heard by submission. [1]

*Trial Court Disposition*: The Honorable R.H. Wallace, Jr., entered an Order on March 13, 2025, denying Defendant's Plea to the Jurisdiction and Motion for Summary Judgment. CR. 168-169. Defendant timely filed its Notice of Appeal on April 2, 2025, pursuant to Texas Rules of Appellate Procedure Rule 4.2. CR. 172.

---

[1] The Clerk's Record was filed on April 14, 2025. Upon filing, however, the Clerk's Record was incomplete and the University timely filed a request for a supplemental record from the Clerk. Despite having requested this pleading, this appears to be missing from the record. At the time of the filing of this brief, the Clerk's record has not been supplemented and this document remains missing from the record; therefore, it is attached hereto as Appendix Tab 1.

## Statement Regarding Oral Argument

Oral argument is not necessary in this case, as the briefing amply demonstrates that the trial court erroneously denied the University of Texas at Arlington's Plea to the Jurisdiction relating to Plaintiff James McMerchant's Title VII claim. However, if the Court determines that oral argument would be helpful, the University respectfully requests an opportunity to participate.

## Issues Presented

Statutory prerequisites to suit are jurisdictional requirements in suits against governmental entities under Texas law. Did the trial court err in denying the University's Plea to the Jurisdiction because James McMerchant failed to meet the administrative, statutory prerequisites for bringing a Title VII claim?

## Introduction

McMerchant filed an EEOC charge (the "Charge") on January 13, 2021, based on an alleged adverse action nearly 4 years prior. This means Plaintiff failed to exhaust administrative remedies before filing suit, thereby depriving the trial court of jurisdiction over his claim. As the Supreme Court explained, "Title VII directs that a 'charge … shall be filed' with the EEOC 'by or on behalf of a person claiming to be aggrieved' within 180 days 'after the alleged unlawful employment practice occur[s].'" *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 543 (2019) (quoting 42 U.S.C. § 2000e-5(b), (e)(1)). "The 180 calendar day filing deadline is extended to 300 calendar days if a state or local agency enforces a law that prohibits employment discrimination on the same basis."[2] "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity" under Texas law. Tex. Gov't Code § 311.034. Thus, as a matter of Texas procedural law, failure to timely exhaust Title VII's administrative remedies would deprive the trial court of jurisdiction to adjudicate those claims against the University. *United Indep. Sch. Dist. v. Mayers*, 665 S.W.3d 775, 783 (Tex. App.—San Antonio 2023, no pet.) ("If [Plaintiff] failed to meet those federal statutory

---

[2] U.S. Equal Employment Opportunity Commission, Time Limits for Filing a Charge, https://www.eeoc.gov/time-limits-filing-charge (last visited May 27, 2025).

prerequisites, the trial court lacked subject-matter jurisdiction over her Title VII and ADEA claims against [Defendant] as a matter of Texas law.").

Here, McMerchant failed to meet this statutory prerequisite by filing his Charge more than 300 days after any alleged adverse action occurred.

## Statement of Facts

### I. Factual Background

McMerchant was hired as a Warehouse Worker in the Property Management department of the University's Division of Business Affairs on June 23, 2015. CR.44. at 13:5-11; CR.68. Initially, McMerchant reported to Steve Burdette, who reported to Jason Welch, an Assistant Director in the Division of Business Affairs. CR. 45. at 18:16-17, CR.68. In 2016, while working as a Warehouse Worker, Plaintiff cross trained in the Mail Services department, also in the Division of Business Affairs. CR.46. at 19:2-22, 74:6-9; CR.68. Specifically, Plaintiff was in training in the mail services department in preparation for the retirement of a Mail Carrier, C.W. Gayle. CR.62. at 73:10-14, CR. 68. According to Plaintiff, once he started training in the mail room, he stopped working in the Warehouse. CR. 62. at 73:18-21. For context, Warehouse Workers and Mail Carriers serve similar functions: Warehouse Workers deliver and move freight around campus and assist with office and event setup; Mail Carriers deliver mail across campus. CR. 68.

Approximately one year after Plaintiff was hired, Derek Gieralt was hired as a Warehouse Worker. CR. 45. at 18:6-12, CR. 68. In 2017, the Property Management

department posted a new position, "Coordinator I," for which Gieralt applied and was ultimately hired. CR. 68. Plaintiff *did not apply* for the position. CR. 68.

In 2019, Plaintiff was classified as a Warehouse Worker with a salary of $28,428, and Gieralt was classified as a Coordinator I with a salary of $34,092. CR. 52, 68-69, 74. However, for a time, Gieralt was mistakenly listed on the University's website as a Mail Carrier, but this was an error; he had never held the position of Mail Carrier. CR. 68. Plaintiff sought out Derek Gieralt's salary information on the Texas Tribune website's database purporting to show state of Texas employees' salaries and found that Derek Gieralt's yearly salary was listed at $35,000. *See* CR.10 at 38:16-39:24, 46:22- 48:13. Because of the mistake on the University's website, Plaintiff believed Gieralt's higher salary was attributed to his classification as a Mail Carrier, therefore if he [Plaintiff] were classified as a Mail Carrier instead of a Warehouse Worker, he believed he should also receive higher pay. CR. 52 at 40:10-18; CR.47. at 34:11-36:06, CR.5 at ¶ 13 (claiming that Derek Gieralt was hired as Mail Carrier II in 2020). In reality, as stated above, Gieralt's salary reflected his 2017 promotion to the Coordinator position. CR. 68. A reclassification from Warehouse Worker to Mail Carrier, however, was not a promotion and would not necessarily result in higher pay. *Id.*

At the end of 2019, around the time Gayle was set to retire, Plaintiff approached Welch and requested a raise and title change from Warehouse Worker to Mail Carrier. CR. 68, CR. 51 at 39:7-19. Welch was amenable to this request but could not take action immediately due to a hiring freeze. CR. 68, CR. 51 at 39:7-24. As soon as the freeze was lifted, Plaintiff was reclassified as a Mail Carrier and

3

received a raise. CR. 68. Plaintiff's raise, from $28,428 to $30,000, reflected that Plaintiff was performing the duties of a Mail Carrier and had picked up some of the work previously handled by Gayle and would continue to do so. *Id.,* CR. 74.

## II. Procedural Background

Plaintiff filed a Charge of Discrimination ("the Charge") with the EEOC/TWC on January 13, 2021, alleging he was promoted in 2017 but had yet to receive the "appropriate pay raise associated with his promotion." CR. 41. The Charge also alleges that Welch informed Plaintiff that when Gayle retired, his pay would be adjusted; however, there is no allegation of an adverse action against him related to this assertion. CR.41. On October 20, 2022, Plaintiff filed his Original Petition against the University, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). Appendix Tab 2. On November 10, 2022, the University filed its Original Answer and General Denial asserting, among others, the affirmative defense of failure to exhaust administrative remedies for all relevant claims. Appendix Tab 3 at ¶12. On December 1, 2022, Defendant moved to dismiss Plaintiff's ADEA claim for lack of subject matter jurisdiction because it was barred by sovereign immunity. Appendix Tab 4. Plaintiff subsequently filed his First Amended Petition on January 26, 2023, asserting a single claim for race discrimination in violation of Title VII. CR. 4-10. Defendant filed its Answer to Plaintiff's First Amended Petition on February 3, 2023, raising once again the failure to exhaust administrative remedies affirmative defense due to Plaintiff's failure to file a charge with the Equal Employment Opportunity Commission or

4

Texas Workforce Commission within 300 days after the alleged unlawful employment practice occurred. Appendix Tab 5 at ¶12. On February 26, 2024, Defendant filed its Plea to the Jurisdiction and Motion for Summary Judgment asserting the trial court lacked jurisdiction over Plaintiff's claim due to his failure to exhaust administrative remedies and failure to meet his burden to establish a prima facia case of race discrimination. CR.23-39.

## Summary of the Argument

The trial court erroneously denied the University's Plea to Jurisdiction over McMerchant's Title VII claim because he failed to exhaust his administrative remedies as required by Title VII. Such statutory prerequisites to suit are jurisdictional requirements in all suits against a governmental entity in a Texas state court, and McMerchant's failure to demonstrate compliance with all statutory requirements rendered his claims barred against the University. The trial court therefore lacked jurisdiction over McMerchant's claim against the University, and the Court should reverse and dismiss his claim.

## Standard of Review

Jurisdiction "is essential to the court's power to decide a case." *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015) (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). When a governmental entity challenges subject-matter jurisdiction in a plea to the jurisdiction, as Appellant did here, courts must assure themselves of their jurisdiction. *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647

S.W.3d 681, 699 n.8 (Tex. 2022); *Heckman v. Williamson County*, 369 S.W.3d 137, 149 (Tex. 2012). The plaintiff bears the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson,* 590 S.W.3d 544, 550 (Tex. 2019); *see also, e.g., Matzen v. McLane,* 659 S.W.3d 381, 388-89 (Tex. 2021).

"When a plea to the jurisdiction challenges the pleadings, [the court] determine[s] if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. A plea to the jurisdiction can also "properly challenge the existence of those very jurisdictional facts." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (emphasis in original). The court must determine whether it has jurisdiction under the constitution or by statute at the earliest opportunity. *Id*. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Miranda,* 133 S.W.3d at 227. This Court reviews the trial court's ruling on a plea to the jurisdiction *de novo. Chambers-Liberty Cnts. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019).

Similarly, the standard of review for summary judgment motions challenging jurisdiction, and for traditional summary judgment motions under Texas Rule of Civil Procedure 166a(c) is *de novo. Lazarides v. Farris,* 367 S.W.3d 788, 797

(Tex.App.—Houston [14th Dist.] 2012, no pet.); *Thomas v. Long,* 207 S.W.3d 334, 339-40 (Tex. 2006).

## Argument

**I.     The Trial Court Erred in Denying the University's Plea to the Jurisdiction Because the Trial Court Lacked Jurisdiction Over McMerchant's Title VII Claim.**

### A. Plaintiff failed to exhaust his administrative remedies.

The trial court erred in exercising jurisdiction over McMerchant's Title VII claim because he failed to exhaust the mandatory administrative remedies prescribed by federal law. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against individuals "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In addition, Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

However, before a claimant may bring a Title VII action in court, the statute requires the individual to file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged unlawful employment practice occurs. *See* 42 U.S.C. § 2000e-5(b), (e)(1); *Fort Bend*, 587 U.S. at 543. This filing requirement is a statutory prerequisite to suit.

Because McMerchant filed his Title VII claim in Texas state court, Texas procedural law governs whether the court had subject-matter jurisdiction over the claim. *Mayers*, 665 S.W.3d at 782 (citing *BNSF Ry. Co. v. Phillips*, 485 S.W.3d 908, 910 (Tex. 2015) (per curiam)). Under Texas law, statutory prerequisites to suit—including exhaustion of administrative remedies—are considered jurisdictional in cases brought against governmental entities. Tex. Gov't Code § 311.034. As the *Mayers* court explained, "[i]f [Plaintiff] failed to meet those federal statutory prerequisites, the trial court lacked subject-matter jurisdiction over her Title VII and ADEA claims against [Defendant] as a matter of Texas law." 665 S.W.3d at 783.

McMerchant's Charge of Discrimination centers on the allegation that he was "promoted" to Mail Carrier II in 2017 but did not receive a corresponding pay raise and title promotion until 2020. CR. 41. This mistaken belief is seemingly based on the perceived raise and titled promotion Gieralt, a white man, received immediately when he was promoted to Mail Carrier II in 2017—a position he, but not McMerchant, had applied for— and McMerchant's misunderstanding about the pay associated with the Warehouse Worker and Mail Carried positions. *Id*; CR.5, CR. 47-49, at 34:11-36:06. While the undisputed evidence rebuts these allegations,[3] even

---

[3] The undisputed evidence shows that Plaintiff did not receive a promotion in 2017, he did not request a raise or title change until the end of 2019 at earliest, and Gieralt's salary increase in 2017

if taken as true, McMerchant was required to file his Charge within 300 days of that alleged discriminatory act. Because the Charge fails to identify a specific date in 2017 on which the alleged failure occurred, we construe the latest possible date—December 31, 2017—as the operative date for purposes of calculating timeliness. Accordingly, to have properly exhausted his administrative remedies, McMerchant was required to file his Charge no later than October 27, 2018. CR.41. He did not file his charge until *nearly 4 years later*, on January 13, 2021, rendering this claim untimely and barred. *Id.*

As the Supreme Court has explained, each discrete act of discrimination or retaliation must be a separate charge with the EEOC and must be filed within the applicable statute of limitations. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Despite this, McMerchant believes his charge covers numerous instances of discrimination, including his claim that he requested a raise near the end of 2019, around the time Gayle retired or was retiring. CR. 41. However, his Charge does not allege that the request was denied, that he failed to receive a raise, or otherwise describe any action related to this request that could be considered adverse. Not only was McMerchant required to bring this act in a

---

was a result of his promotion to Coordinator I, a position different than Plaintiff's with different roles and responsibilities. See generally, CR.19-81.

separate charge, but an EEOC charge must include specific details about each discrete adverse employment action and courts will not construe a change to include facts that were omitted. *National Railroad*, 536 U.S. at 113; *see also, Jefferson v. Christus St. Joseph Hosp.,* 374 Fed. Appx. 485, 490 (5th Cir. 2010) (unpublished) (affirming district court's ruling that certain claims were unexhausted where plaintiffs failed to describe the discriminatory conduct in the charge) (citing *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008) (Title VII case)). Therefore, the Court must disregard this unsupported allegation as a discrete act requiring timely filing and no basis for tolling the limitations period.

Even if the Court construes the Charge broadly to treat the 2019 raise request as an adverse action, which it should not, McMerchant still needed to file within 300 days and as a separate Charge—by October 26, 2020—to preserve this claim. McMerchant filed his EEOC Charge on January 13, 2021. So, only adverse actions that occurred within the 300 preceding days—on or after March 19, 2020—are timely brought. There are none.

Accordingly, McMerchant failed to timely exhaust his administrative remedies, and the trial court lacked subject-matter jurisdiction over his Title VII claim.

**B. Plaintiff cannot rely on the continuing violation doctrine to resurrect his procedural failures.**

In his response to Defendant's Plea, McMerchant tries to excuse his failure to timely exhaust administrative remedies by claiming, for the first time, that he faced continued discrimination from 2017 through October 2020. CR. 93. at ¶ 25. He argues that the continuing violation doctrine applies and that the 300-day filing period did not start until October 2020. CR. 94 at ¶ 26. This argument fails because the continuing violation doctrine does not apply to his claims and lacks support in the record.

First, the continuing violation doctrine applies only to claims of ongoing harassment—a claim which McMerchant has not raise.[4] Second, the unlawful conduct must have occurred as a series of related acts over time, not discrete, isolated incidents. *WalMart Stores, Inc. v. Davis*, 979 S.W.2d 30, 41-42 (Tex. App.—Austin 1998, pet. denied). McMerchant's alleged failure to receive a promotion in 2017 and failure to receive a raise in 2019 are discrete acts, to which the doctrine does not apply. *National Railroad,* 536 U.S. at 114 (holding that hostile work environment

---

[4] *National Railroad,* 536 U.S. at 114 (2002) (holding that hostile work environment claims may qualify as continuing violations, while "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts); *see also,* U.S. Equal Employment Opportunity Commission, Time Limits for Filing a Charge, https://www.eeoc.gov/time-limits-filing-charge (last visited May 27, 2025) (explaining the "one exception to this general rule" of requiring a charge be filed within 180/300 days of each discrete act is "if you are alleging ongoing harassment.").

claims may qualify as continuing violations, while "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts).

McMerchant therefore had to file his Charge within 300 days of each discrete act: by October 2018 for the 2017 promotion denial, and by October 2020 for the 2019 raise denial. Since he filed on January 13, 2021, he failed to timely exhaust his remedies and the trial court thus lacked subject-matter jurisdiction over Title VII claim.

## Prayer

For the foregoing reasons, this Court should reverse the trail court's judgement denying the University's Plea to the Jurisdiction and Motion for Summary Judgment.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Chief for General Litigation Division

BRIANNA M. KROMINGA
Assistant Attorney General
Texas Bar No. 24103252
Brianna.Krominga@oag.texas.gov

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(214) 290-8884 | FAX: (512) 320-0667

COUNSEL FOR APPELLANT

## Certificate of Service

I hereby certify that on May 27, 2025, a true and correct copy of the foregoing document has been served via the Court's electronic notification system to:

Ali Crocker
Crocker Russell & Associates
2401 Callender Road, Suite 103
Mansfield, Texas 76063
Office: (817) 482-6570
Fax: (682) 232-1850
alic@cralawfirm.com

/s/ *Brianna M. Krominga*
**BRIANNA M. KROMINGA**
Assistant Attorney General

## Certificate of Compliance

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 2,923 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ *Brianna M. Krominga*
**BRIANNA M. KROMINGA**
Assistant Attorney General

# In the Court of Appeals for the Fifteenth Judicial District Austin, Texas

University of Texas at Arlington,

*Appellant,*

*v.*

James McMerchant,

*Appellee.*

On Appeal from Cause No. 236-337930-22, in the 236th Judicial District Court of Tarrant County, Texas

**APPENDIX**

| | | TAB |
|---|---|---|
| 1. | Defendant's Notice of Submission Hearing PTJ-MSJ | 1 |
| 2. | Plaintiff's Original Petition | 2 |
| 3. | Defendant's Original Answer | 3 |
| 4. | Defendant's Plea to the Jurisdiction and motion to dismiss | 4 |
| 5. | Defendant's Answer to Plaintiff's Amended Petition | 5 |
| 6. | 42 U.S.C. 2000e-2(a) | 6 |
| 7. | 42 U.S.C. 2000e-3(a) | 7 |
| 8. | 42 USC 2000e-5(b),(e)(1) | 8 |
| 9. | Tex Gov Code 311.034 | 9 |

TAB 1:

FILED
TARRANT COUNTY
2/29/2024 4:27 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 236-337930-22

| | | |
|---|---|---|
| JAMES MCMERCHANT, | § | IN THE DISTRICT COURT |
| *Plaintiff*, | § | |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT | § | TARRANT COUNTY, TEXAS |
| ARLINGTON. | § | |
| *Defendant.* | § | |
| | § | |
| | § | 236TH JUDICIAL DISTRICT |

---

**NOTICE OF SUBMISSION ON DEFENDANT'S PLEA TO THE JURISDICTION AND MOTION FOR SUMMARY JUDGEMENT**

---

PLEASE TAKE NOTICE that Defendant's Plea to the Jurisdiction and Motion for Summary Judgment has been set for submission on April 19, 2024 in the 236th Judicial District Court, 100 North Calhoun Street, Fort Worth, Texas.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

_____ */s/ Mary B. Quimby*_____
**MARY B. QUIMBY**
*Attorney in Charge*
Texas Bar No. 24132506
Assistant Attorney General
General Litigation Division

P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
mary.quimby@oag.texas.gov

***Counsel for Defendant UTA***

## CERTIFICATE OF SERVICE

I hereby certify that on February 29, 2024, a true and correct copy of this document was electronically filed via the Court's e-service system, causing electronic service upon all counsel of record.

_/s/ Mary B. Quimby_
**MARY B. QUIMBY**
Assistant Attorney General

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Hendrix on behalf of Mary Quimby
Bar No. 24132506
Laura.Hendrix@oag.texas.gov
Envelope ID: 85071059
Filing Code Description: Notice
Filing Description: 20240229_Ntc of Submission PTJ_MSJ
Status as of 2/29/2024 4:31 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Crocker | | ali@cralawfirm.com | 2/29/2024 4:27:36 PM | SENT |

Associated Case Party: THEUNIVERSITY OF TEXAS AT ARLINGTON

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 2/29/2024 4:27:36 PM | SENT |
| Mary Quimby | | mary.quimby@oag.texas.gov | 2/29/2024 4:27:36 PM | SENT |

TAB 2:

CAUSE NO. 236-337930-22 _____

| | | |
|---|---|---|
| JAMES MCMERCHANT,<br>        Plaintiff, | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | _____ JUDICIAL DISTRICT |
| UNIVERSITY OF TEXAS AT<br>ARLINGTON,<br>        Defendant. | §<br>§<br>§<br>§ | TARRANT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** James McMerchant, hereinafter called Plaintiff, complaining of University of Texas at Arlington. hereinafter called Defendant, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.      Plaintiff intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.      Plaintiff, James McMerchant, is an individual residing in the State of Texas whose address is 7413 Beckwood Drive, Fort Worth, Texas 76112.

3.      Defendant University of Texas at Arlington is an agency of the State of Texas and may be served with process by serving its interim President, Teik C. Lim, located at 701 S. Nedderman Drive, Arlington, Texas 76019, or wherever he may be found.

### JURISDICTION AND VENUE

4.      The subject matter in controversy is within the jurisdictional limits of this court.

5.      The damages sought in this suit are within the jurisdictional limits of this Court. As required by Texas Rule of Civil Procedure 47, Plaintiff seeks only monetary relief aggregating

$250,000 or less, excluding costs, prejudgment interest, and attorney's fees. Tex. R. Civ. P. 47(c)(1).

6.     Venue is proper in Tarrant County in that the events giving rise to this cause of action occurred within Tarrant County.

**FACTS**

7.     Plaintiff is sixty-seven (67) year old African-American individual.

8.     Plaintiff was initially employed by Defendant as a warehouse worker.

9.     Throughout Plaintiff's tenure with Defendant, he was not written up, reprimanded, or admonished.

10.     In or around 2017, Defendant promoted Plaintiff from warehouse worker to a Mail Carrier II position which included a new title, new job duties, and a pay raise. Thereafter, Plaintiff assumed his new job duties but Defendant failed to change his title and pay.

11.     Plaintiff repeatedly brought the title and pay issues to the attention of his manager, Jason Welch, as well as Defendant's human resource department. Neither Jason Welch nor Defendant's human resource department did anything to remedy the problems.

12.     In or around 2019, two years after Plaintiff's promotion but still without the pay raise associated with that promotion, Jason Welch informed Plaintiff that when another employee left her position, Plaintiff's pay and title would be adjusted to the proper rate.

13.     In or around 2020, Defendant hired Derek Gieralt, a younger Caucasian man, for a Mail Carrier II position. Derek Gieralt started working as a warehouse employee, but with the Mail Carrier II title, and was receiving pay associated with the Mail Carrier II position. When questioned about this by Plaintiff, Defendant could not explain why it took over two years to get Plaintiff's, a black man, title and pay raised to the Mail Carrier II position when he was hired for and began working

in that position in 2017, but that Defendant would go out of its way to make sure that the title and pay were accurate for a white individual immediately upon hiring but then pay that increased pay for someone doing less as a warehouse worker.

## CAUSE OF ACTION I: AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") VIOLATION

14. Plaintiff incorporates all preceding paragraphs herein.

15. Age Discrimination in Employment Act of 1967., 81 Stat. 602, states: "it shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of age." *See also* Tex. Lab. Code § 21.051.

16. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

17. Within this general framework, the specifics to establish a prima facie case are outlined in the four-point *McDonnell* test. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. The plaintiff must show that: (1) the plaintiff belongs to a class protected by Title VII; (2) the plaintiff was qualified for his

position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

18.     With respect to the first requirement, under ADEA, discrimination based on age is prohibited. In 2017 at the onset of this discrimination, Plaintiff was sixty-two (62) years old which falls within a protected class as a person over 40 years of age.

19.     As to the second requirement, throughout Plaintiff's tenure with Defendant, he was not written up, reprimanded, or admonished. In fact, after having worked for and developed a good working history for Defendant, Plaintiff was promoted to a Mail Carrier II position in 2017. Plaintiff worked in that Mail Carrier II position for years despite not receiving the title and pay increase that he was promised by Defendant in his promotion. Despite not receiving his additional promised benefits, Plaintiff dutifully worked in that position without any complaints from Defendant. Thus, it is apparent that Plaintiff was qualified for his position.

20.     Despite being qualified, Plaintiff received adverse employment action. Despite his work performance history and never having received a reprimand or other disciplinary action during his tenure with Defendant, Plaintiff was given increased responsibility with his new position but was refused the correct title and pay raise that was part of that position. He was directly damaged as a result because he was forced to work in his new position with increased responsibilities for over two years without receiving the pay for which he was promised in that promotion to Mail Carrier II.

16.     Defendant has previously responded to Plaintiff's allegations with the excuse that Plaintiff said he didn't want a pay raise. That is absolutely false. Between 2017 when he was

promoted and 2020 when the younger white male was hired for the same position and immediately given the new title and increased pay associated with the Mail Carrier II position, Plaintiff repeatedly went to his manager, Jason Welch, and Defendant's human resources department to complain that he wasn't receiving the proper pay and title. Each time Plaintiff was repeatedly given an excuse as to why the pay could not be adjusted at that time. Plaintiff simply wanted to be paid for the work he was doing. Defendant had no problem immediately paying the younger white man the proper pay for having the same position title as Plaintiff, they only had problems paying the older African-American man what he was entitled to be paid.

17. Defendant has yet to provide a legitimate reason for the refusal to grant Plaintiff the pay and title for which he was hired but denied but were so eager to provide to Plaintiff's younger, Non-African American colleagues.

## CAUSE OF ACTION II: TITLE VII VIOLATION FOR DISCRIMINATION BASED ON RACE

18. Plaintiff incorporates all preceding paragraphs herein.

19. Title VII of the Civil Rights Act of 1964 (the "Act") makes it unlawful to discriminate against someone on the basis of race, color, national origin, sex (including pregnancy, sexual orientation, and gender identity) or religion. The Act prohibits not only intentional discrimination, but also practices that have the effect of discriminating against individuals because of their race, color, national origin, religion, or sex.

20. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that

the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

21. Within this general framework, the specifics to establish a prima facie case are outlined in the four-point *McDonnell* test. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. The plaintiff must show that: (1) the plaintiff belongs to a protected class; (2) the plaintiff was qualified for his position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

22. With respect to the first requirement, Plaintiff is African-American and thus a member of a protected class based on his race.

23. As stated above, throughout Plaintiff's tenure with Defendant, he was not written up, reprimanded, or admonished. In fact, after having worked for and developed a good working history for Defendant, Plaintiff was promoted to a Mail Carrier II position in 2017. Plaintiff worked in that Mail Carrier II position for years despite not receiving the title and pay increase that he was promised by Defendant in his promotion. Despite not receiving his additional promised benefits, Plaintiff dutifully worked in that position without any complaints from Defendant. Thus, it is apparent that Plaintiff was qualified for his position.

24. Also as previously stated, despite being qualified Plaintiff received adverse employment action from Defendant. Despite his work performance history and never having received a reprimand or other disciplinary action during his tenure with Defendant, Plaintiff was given increased responsibility with his new position but was refused the correct title and pay raise

that was part of that position. He was directly damaged as a result because he was forced to work in his new position with increased responsibilities for over two years without receiving the pay for which he was promised in that promotion to Mail Carrier II.

25. Between 2017 when he was promoted and 2020 when the younger white male was hired for the same position and immediately given the new title and increased pay associated with the Mail Carrier II position, Plaintiff repeatedly went to his manager, Jason Welch, and Defendant's human resources department to complain that he wasn't receiving the proper pay and title. Each time Plaintiff was repeatedly given an excuse as to why the pay could not be adjusted at that time. Plaintiff simply wanted to be paid for the work he was doing. Defendant had no problem immediately paying the younger white man the proper pay for having the same position title as Plaintiff, they only had problems paying the older African-American man what he was entitled to be paid.

26. Defendant has yet to provide a legitimate reason for the refusal to grant Plaintiff the pay and title for which he was hired but denied but were so eager to provide to Plaintiff's younger, Non-African American colleagues.

**CONDITIONS PRECEDENT**

27. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Petition is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

**DAMAGES**

28.     Plaintiff incorporates all preceding paragraphs herein. As a direct and proximate result of the occurrence made the basis of this lawsuit and Defendant's acts as described herein, Plaintiff suffered damages including but not limited to the loss of income and earnings, attorney fees, court costs, and other damages as described herein or as may be prove at the time of trial.

**ATTORNEY'S FEES**

29.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Chapter 38 of the Texas Civil Practice and Remedies Code; and, (c) common law.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully Submitted,

Crocker Russell & Associates
2401 Callender Road, Suite 103
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

_/s/ Ali Crocker Russell_
Ali Crocker Russell
Bar No: 24098868
Email: ali@cralawfirm.com
Attorney for Plaintiff

DocuSign Envelope ID: 96AD8DE2-21F8-4693-B300-DA58E9CE3ED8



James McMerchant
**Crocker Russell & Associates**
**c/o Ali Crocker**
**2401 Callender Road, Suite 103**
**Mansfield, TX 76063**

# NOTICE OF DISMISSAL AND RIGHT TO FILE CIVIL ACTION

## James McMerchant v UNIVERSITY OF TEXAS AT ARLINGTON

| TWCCRD Charge Number | EEOC Charge Number | TWCCRD Representative |
|---|---|---|
| 1A21464 | 31C-2021-00415 | Monica John |

The Civil Rights Division has dismissed this Charge and is closing its file for the following reason:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the TWCCRD.

[ ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act or the Texas Labor Code, Chapter 21.

[ ]  The Respondent employs less than the required number of employees or not otherwise covered by the statutes.

[ ]  We cannot investigate your charge because it was not filed within the time limits required by law.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You had 30 days to accept a reasonable settlement offer that afforded full relief for the harm you alleged. You failed to accept the full relief.

**[X]  The TWCCRD issues the following determination: Based upon its investigation, the TWCCRD is unable to conclude that the information obtained establishes any violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.**

[ ]  Other:

101 E. 15th Street, Room: Guadalupe CRD • Austin, Texas 78778-0001• Austin, Texas 78701 • (512) 463-2642 (T) • (512) 482-8465 (F) • Relay Texas: 800-735-2989 (TDD) 800-735-2988 (Voice) • www.texasworkforce.org

Equal Opportunity Employer / Program

DocuSign Envelope ID: 96AD8DE2-21F8-4693-B300-DA58E9CE3ED8

**James McMerchant v UNIVERSITY OF TEXAS AT ARLINGTON**
**TWCCRD Charge Number: 1A21464«Field2»**
**EEOC Charge Number: 31C-2021-00415**

## NOTICE OF RIGHT TO FILE CIVIL ACTION

Pursuant to Sections 21.208, 21.252 and 21.254 of the Texas Labor Code, as amended, this notice is to advise you of your right to bring a private civil action in state court in the above referenced case. **PLEASE BE ADVISED THAT YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION.** The time limit for filing suit based on a federal claim may be different.

## EEOC REVIEW NOTICE

As your charge was dual filed under Title VII of the Civil Rights Act/Age Discrimination in Employment Act/Americans with Disabilities Act, which are enforced by the U.S. Equal Employment Opportunity Commission (EEOC), you have the right to request an EEOC review of this final decision on your case. **To secure a review, you must request it in writing within fifteen (15) days from the date of the notice.** Send your request to: San Antonio EEOC, 5410 Fredericksburg Road, Suite 200, San Antonio, TX 78229.

On behalf of the Division

*Lynda Pringle For Bryan Snoddy*                 8/24/2022
_____          _____
Bryan Snoddy                                              Date
Division Director

cc:

THE UNIVERSITY OF TEXAS AT ARLINGTON
c/o Shelby Boseman
701 S. Nedderman Drive, Suite 246
Arlington, TX 76019

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Micala Munoz on behalf of Ali Crocker
Bar No. 24098868
micala@cralawfirm.com
Envelope ID: 69398406
Status as of 10/20/2022 9:23 AM CST

Associated Case Party: James McMerchant

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Crocker | | ali@cralawfirm.com | 10/20/2022 9:13:32 AM | SENT |
| Martha Aguilar | | martha@cralawfirm.com | 10/20/2022 9:13:32 AM | SENT |
| Micala Munoz | | micala@cralawfirm.com | 10/20/2022 9:13:32 AM | SENT |

Tab 3:

FILED
TARRANT COUNTY
11/10/2022 6:05 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 236-337930-22

| | | |
|---|---|---|
| JAMES MCMERCHANT, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | TARRANT COUNTY, TEXAS |
| UNIVERSITY OF TEXAS AT ARLINGTON. | § | |
| | § | |
| | § | |
| *Defendant.* | § | 236TH JUDICIAL DISTRICT |

---

## DEFENDANT'S ORIGINAL ANSWER AND REQUEST FOR DISCLOSURE

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant University of Texas at Arlington ("UTA") who files this Original Answer and Request for Disclosure, and would respectfully show the Court as follows:

**I.**
**ORIGINAL ANSWER**

Defendant asserts a general denial to the allegations contained in Plaintiff's Original Petition and all matters subsequently set up by Plaintiff, as authorized by Rule 92 of the Texas Rules of Civil Procedure, and demand that Plaintiff prove such allegations by a preponderance of the evidence as required by law.

**II.**
**DEFENSES**

In addition to its general denial, Defendant UTA asserts the following defenses:

1. Defendant UTA denies that it violated any of Plaintiff's rights under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., Chapter 21 of the Texas Labor Code, or any other law or statute which Plaintiff sues or may be suing.

2.    Defendant UTA denies that Plaintiff is entitled to damages, attorney's fees, interest, or costs in any amount whatsoever, or to any other relief demanded in Plaintiff's Original Petition.

3.    Defendant UTA asserts, with respect to any alleged material adverse employment action it took concerning Plaintiff and of which Plaintiff complains in this lawsuit, that it would have taken the same action or actions regardless of Plaintiff's alleged protected characteristics or status or alleged retaliation.

4.    Defendant UTA denies that its employees were motivated by any discriminatory or retaliatory intent of any kind.

5.    Defendant UTA asserts that the employment actions, if any, taken regarding Plaintiff were taken without any discriminatory or retaliatory intent.

6.    Defendant UTA asserts that the employment actions, if any, taken regarding Plaintiff concerning any claim alleged by Plaintiff in this lawsuit were based on a good-faith belief that such actions were lawful and consistent with agency policy.

7.    Defendant UTA asserts that each alleged challenged action of which Plaintiff complains in this lawsuit was taken for legitimate, non-discriminatory business reasons.

8.    Defendant UTA asserts that Plaintiff has failed to mitigate or avoid damages, emotional or monetary, he claims to have suffered and that none of the alleged damages, if any, are the result of any discriminatory or retaliatory act by Defendant.

9.    Sovereign immunity from suit bars any and all of Plaintiff's claims to which that affirmative defense may apply.

10. Sovereign immunity from liability bars Plaintiff's recovery to such an extent that this affirmative defense may apply.

11. Defendant UTA asserts its right to any allowable credits or offsets against any judgment in Plaintiff's favor.

12. Defendant UTA asserts the affirmative defense of failure to exhaust administrative remedies for all claims to which it may apply.

13. Any damages Plaintiff may allege are subject to applicable statutory caps or specifically denied by statute.

14. To the extent that Plaintiff's claims or filings occurred outside any applicable statutory periods or were not thoroughly exhausted through any required administrative process, her claims are barred.

15. Defendant UTA asserts the right to raise additional affirmative defenses that become apparent throughout the factual development of this case.

## III.
## PRAYER

Defendant requests judgment of the Court that Plaintiff take nothing by this suit and that Defendant recovers all costs and such other and further relief to which they may be justly entitled.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division

_/s/ Benjamin S. Walton_
**BENJAMIN S. WALTON**
*Attorney in Charge*
Texas Bar No. 24075241
Assistant Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
benjamin.walton@oag.texas.gov

**ATTORNEY FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through the electronic-filing manager in compliance with TRCP 21a on this 10th day of November, 2022, to:

Ali Crocker Russell
2401 Callender Road, Suite 103
Mansfield, Texas 76063
ali@cralawfirm.com
*ATTORNEY FOR PLAINTIFF*

_/s/ Benjamin S. Walton_
**BENJAMIN S. WALTON**
Assistant Attorney General

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Hendrix on behalf of Benjamin Walton
Bar No. 24075241
Laura.Hendrix@oag.texas.gov
Envelope ID: 70089140
Status as of 11/11/2022 8:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Crocker | | ali@cralawfirm.com | 11/10/2022 6:05:28 PM | SENT |
| Micala Munoz | | micala@cralawfirm.com | 11/10/2022 6:05:28 PM | SENT |
| Martha Aguilar | | martha@cralawfirm.com | 11/10/2022 6:05:28 PM | SENT |

Associated Case Party: THEUNIVERSITY OF TEXAS AT ARLINGTON

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Benjamin Walton | | benjamin.walton@oag.texas.gov | 11/10/2022 6:05:28 PM | SENT |
| Mary Quimby | | mary.quimby@oag.texas.gov | 11/10/2022 6:05:28 PM | SENT |
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 11/10/2022 6:05:28 PM | SENT |

TAB 4:

FILED
TARRANT COUNTY
12/1/2022 8:46 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 236-337930-22

| | | |
|---|---|---|
| JAMES MCMERCHANT, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | TARRANT COUNTY, TEXAS |
| UNIVERSITY OF TEXAS AT | § | |
| ARLINGTON. | § | |
| | § | |
| *Defendant.* | § | 236TH JUDICIAL DISTRICT |

---

## DEFENDANT'S PLEA TO THE JURISDICTION AND MOTION TO DISMISS UNDER TEXAS RULE OF CIVIL PROCEDURE 91A

---

NOW COMES Defendant The University of Texas at Arlington ("UTA") and files this Plea to the Jurisdiction and Motion to Dismiss under Texas Rule of Civil Procedure 91a.

This Court should dismiss Plaintiff's ADEA claims for lack of subject-matter jurisdiction because it is barred by sovereign immunity. Additionally, Plaintiff's ADEA claim has no basis in law for the reasons described in more detail below. As such, this Court should dismiss Plaintiff's ADEA claims under Texas Rule of Civil Procedure 91a.

### I.     BACKGROUND

Plaintiff alleges he is a 67 year-old African American man, employed by the defendant, originally as a "warehouse worker." Orig. Pet. ¶¶ 7-8. Plaintiff alleges that in 2017, he was promoted to a "Mail Carrier II" position which included a pay raise, but Defendant failed to change his title and pay even though he had assumed his new role. *Id*. ¶ 10. Plaintiff alleges that in 2019, two years after he assumed the "Mail Carrier II" position, his pay and title were adjusted to the proper rate. *Id*. ¶ 12.

## II. ARGUMENT AND AUTHORITIES

### A. Plea to the Jurisdiction

#### i. Standard of Review

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 149 (Tex. 2012). The plaintiff bears the burden to affirmatively demonstrate the trial court's jurisdiction. *Id.* at 150; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (The standard of review for subject-matter jurisdiction requires the pleader to "allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause."); *Texas Dep't of Crim. Justice v. Miller*, 48 S.W.3d 201, 203 (Tex. App.—Houston [1st Dist.]1999), *rev'd on other grounds*, 51 S.W.3d 583, 589 (Tex. 2001)). Subject-matter jurisdiction cannot be waived, nor is it presumed. *Id.* at 443–44. At the earliest opportunity the court must determine whether it has jurisdiction under the constitution or by statute to allow litigation to proceed. *Miranda*, 133 S.W.3d at 226. "When a plea to the jurisdiction challenges the pleadings, [the court] determine[s] if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* at 226. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.* at 227.

#### ii. Plaintiff's ADEA claim is barred by sovereign immunity.

A suit against the State or its agencies is barred by sovereign immunity absent clear and unambiguous legislative consent. *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224 -225 (Tex. 2004); *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Sovereign immunity deprives a court of subject-matter jurisdiction, and dismissal with prejudice is proper. *Ramos v. Texas Dep't of Pub. Safety*, 35 S.W.3d 723, 734 (Tex. App.—Houston [1st Dist.] 2000,

pet. denied) (citing *City of Austin v. L.S. Ranch, Ltd.,* 970 S.W.2d 750, 752 (Tex. App.—Austin 1998.). This immunity extends to various divisions of state government, including universities. *Slade v. Tex. S. Univ. Bd. of Regents*, 232 S.W.3d 395, 398 (Tex.App.-Houston [1st Dist.] 2007, no pet.) *citing Tooke v. City of Mexia*, 197 S.W.3d 325, 330 n. 11 (Tex.2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003). UTA is part of the University of Texas System, a state agency. TEX. EDUC. CODE §§ 65.02(a)(1), 68.01 et seq.

Plaintiff is required to affirmatively demonstrate the Court's jurisdiction to hear the lawsuit under some statute that waives sovereign immunity. *Miller,* 51 S.W. 3d at 587. To avoid dismissal based on sovereign immunity, a plaintiff must demonstrate either a valid Congressional abrogation of that immunity or a waiver of immunity by the state. *Univ. of Tex. at El Paso v. Herrera*, 322 S.W.3d 192, 195 (Tex. 2010). Plaintiff can demonstrate neither. The United States Supreme Court has held that the ADEA is not a valid exercise of Congress's power to waive immunity under section 5 of the Fourteenth Amendment and does not validly abrogate the states' sovereign immunity from suit. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91 (2000); *see Sullivan v. Univ. of Tex. Health Sci. Ctr. at Houston Dental Branch*, 217 F. App'x 391, 395 (5th Cir.2007) (holding that medical center had sovereign immunity from an age discrimination claim); *Univ. of Tex. at Dallas v. Matney*, 280 S.W.3d 882, 885 (Tex.App.– Dallas 2009, no pet.) (holding that plaintiff's ADEA claim barred by sovereign immunity); *Tex. A&M AgriLife Ext. Servs. v. Garcia* No. 10-18-00094-CV, 2018 WL 4354055 at *1-2 (Tex.App – Waco 2018, no pet.) (plaintiff did not show that the Texas legislature waived the State's immunity from suits under the ADEA); *Klebe v. Univ. of Tex. Sys.* No. 03-05-00527-CV, 2007 WL 2214344 at *5 (Tex.App – Austin 2007, no pet) (plaintiff offered no legislative authority that authorized an ADEA suit against the State). As a result, this

Court lacks subject-matter jurisdiction over Plaintiff's ADEA claim. Therefore, the Court must dismiss Plaintiff's ADEA claim for lack of subject-matter jurisdiction.

### B. Motion to Dismiss

Generally, "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. Per Rule 91a, "[a] cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* Defendant files this motion to dismiss in accordance with the time limits prescribed in Rule 91a.3(a)–(b). Rule 91a requires this motion to be "granted or denied within 45 days after the motion is filed." Tex. R. Civ. P. 91a.3(c).

Plaintiff's ADEA claim has no basis in law because it is barred by sovereign immunity, as discussed above. Thus, this Court should dismiss the ADEA claim pursuant to Rule 91a.

### CONCLUSION

For the foregoing reasons, Defendant UTA respectfully request this Court to dismiss Plaintiff's ADEA claim.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division

_____*/s/ Mary B. Quimby*_____
**MARY B. QUIMBY**
*Attorney in Charge*
Texas Bar No. 24132506
Assistant Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
mary.quimby@oag.texas.gov

***Counsel for Defendant UTA***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was electronically filed and served using the Court's e-service system on December 1, 2022 and was also served via electronic mail to the following:

Ali Crocker
Crocker Russell & Associates
2401 Callender Road, Suite 103
Mansfield, Texas 76063
Office: (817) 482-6570
Fax: (682) 232-1850
alic@cralawfirm.com

*/s/ Mary B. Quimby*
**MARY B. QUIMBY**
Assistant Attorney General

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Hendrix on behalf of Mary Quimby
Bar No. 24132506
Laura.Hendrix@oag.texas.gov
Envelope ID: 70593433
Status as of 12/1/2022 9:02 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Crocker | | ali@cralawfirm.com | 12/1/2022 8:46:46 AM | SENT |
| Micala Munoz | | micala@cralawfirm.com | 12/1/2022 8:46:46 AM | SENT |
| Martha Aguilar | | martha@cralawfirm.com | 12/1/2022 8:46:46 AM | SENT |

Associated Case Party: THEUNIVERSITY OF TEXAS AT ARLINGTON

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 12/1/2022 8:46:46 AM | SENT |
| Mary Quimby | | mary.quimby@oag.texas.gov | 12/1/2022 8:46:46 AM | SENT |

TAB 5:

FILED
TARRANT COUNTY
2/3/2023 9:02 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 236-337930-22

| | | |
|---|---|---|
| JAMES MCMERCHANT, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff*, | § | |
| v. | § | |
| | § | TARRANT COUNTY, TEXAS |
| THE UNIVERSITY OF TEXAS AT ARLINGTON. | § | |
| | § | |
| *Defendant.* | § | 236TH JUDICIAL DISTRICT |

---

## DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant The University of Texas at Arlington ("UTA") who files this Original Answer and Request for Disclosure, and would respectfully show the Court as follows:

## I.
## ORIGINAL ANSWER

Defendant asserts a general denial to the allegations contained in Plaintiff's Original Petition and all matters subsequently set up by Plaintiff, as authorized by Rule 92 of the Texas Rules of Civil Procedure, and demand that Plaintiff prove such allegations by a preponderance of the evidence as required by law.

## II.
## DEFENSES

In addition to its general denial, Defendant UTA asserts the following defenses:

1. Defendant UTA denies that it violated any of Plaintiff's rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., Chapter 21 of the Texas Labor Code, or any other law or statute which Plaintiff sues or may be suing.

2. Defendant UTA denies that Plaintiff is entitled to damages, attorney's fees, interest, or costs in any amount whatsoever, or to any other relief demanded in Plaintiff's First Amended Petition.

3. Defendant UTA asserts, with respect to any alleged material adverse employment action it took concerning Plaintiff and of which Plaintiff complains in this lawsuit, that it would have taken the same action or actions regardless of Plaintiff's alleged protected characteristics or status or alleged retaliation.

4. Defendant UTA denies that its employees were motivated by any discriminatory or retaliatory intent of any kind.

5. Defendant UTA asserts that the employment actions, if any, taken regarding Plaintiff were taken without any discriminatory or retaliatory intent.

6. Defendant UTA asserts that the employment actions, if any, taken regarding Plaintiff concerning any claim alleged by Plaintiff in this lawsuit were based on a good-faith belief that such actions were lawful and consistent with agency policy.

7. Defendant UTA asserts that each alleged challenged action of which Plaintiff complains in this lawsuit was taken for legitimate, non-discriminatory business reasons.

8. Defendant UTA asserts that Plaintiff has failed to mitigate or avoid damages, emotional or monetary, he claims to have suffered and that none of the alleged damages, if any, are the result of any discriminatory or retaliatory act by Defendant.

9. Sovereign immunity from suit bars any and all of Plaintiff's claims to which that affirmative defense may apply.

10.    Sovereign immunity from liability bars Plaintiff's recovery to such an extent that this affirmative defense may apply.

11.    Defendant UTA asserts its right to any allowable credits or offsets against any judgment in Plaintiff's favor.

12.    Defendant UTA asserts the affirmative defense of failure to exhaust administrative remedies for all claims to which it may apply.

13.    Any damages Plaintiff may allege are subject to applicable statutory caps or specifically denied by statute.

14.    To the extent that Plaintiff's claims or filings occurred outside any applicable statutory periods or were not thoroughly exhausted through any required administrative process, her claims are barred.

15.    Defendant UTA asserts the right to raise additional affirmative defenses that become apparent throughout the factual development of this case.

## III.
## <u>PRAYER</u>

Defendant requests judgment of the Court that Plaintiff take nothing by this suit and that Defendant recovers all costs and such other and further relief to which they may be justly entitled.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division

     */s/ Mary B. Quimby*
**MARY B. QUIMBY**
*Attorney in Charge*
Texas Bar No. 24132506
Assistant Attorney General
General Litigation Division
P.O. Box 12548
Austin, Texas 78711
(512) 463-2120 – Phone
(512) 320-0667 – Fax
mary.quimby@oag.texas.gov

**ATTORNEY FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through the electronic-filing manager in compliance with TRCP 21a on this 3rd day of February, 2023 upon:

Ali Crocker Russell
2401 Callender Road, Suite 103
Mansfield, Texas 76063
ali@cralawfirm.com
*ATTORNEY FOR PLAINTIFF*

     */s/ Mary B. Quimby*
**MARY B. QUIMBY**
Assistant Attorney General

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Laura Hendrix on behalf of Mary Quimby
Bar No. 24132506
Laura.Hendrix@oag.texas.gov
Envelope ID: 72402551
Status as of 2/3/2023 9:06 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Crocker | | ali@cralawfirm.com | 2/3/2023 9:02:45 AM | SENT |
| Micala Munoz | | micala@cralawfirm.com | 2/3/2023 9:02:45 AM | SENT |
| Martha Aguilar | | martha@cralawfirm.com | 2/3/2023 9:02:45 AM | SENT |

Associated Case Party: THEUNIVERSITY OF TEXAS AT ARLINGTON

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 2/3/2023 9:02:45 AM | SENT |
| Mary Quimby | | mary.quimby@oag.texas.gov | 2/3/2023 9:02:45 AM | SENT |

TAB 6:

(Pub. L. 88–352, title VII, §703, July 2, 1964, 78 Stat. 255; Pub. L. 92–261, §8(a), (b), Mar. 24, 1972, 86 Stat. 109; Pub. L. 102–166, title I, §§105(a), 106, 107(a), 108, Nov. 21, 1991, 105 Stat. 1074–1076.)

### REFERENCES IN TEXT

The Subversive Activities Control Act of 1950, referred to in subsec. (f), is title I (§§1–32) of act Sept. 23, 1950, ch. 1024, 64 Stat. 987, which is classified principally to subchapter I (§781 et seq.) of chapter 23 of Title 50, War and National Defense. For complete classification of this Act to the Code, see Tables.

The Controlled Substances Act, referred to in subsec. (k)(3), is title II of Pub. L. 91–513, Oct. 27, 1970, 84 Stat. 1242, which is classified principally to subchapter I (§801 et seq.) of chapter 13 of Title 21, Food and Drugs. For complete classification of this Act to the Code, see Short Title note set out under section 801 of Title 21 and Tables.

The Federal Rules of Civil Procedure, referred to in subsec. (n)(2)(A), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### AMENDMENTS

1991—Subsec. (k). Pub. L. 102–166, §105(a), added subsec. (k).

Subsec. (l). Pub. L. 102–166, §106, added subsec. (l).

Subsec. (m). Pub. L. 102–166, §107(a), added subsec. (m).

Subsec. (n). Pub. L. 102–166, §108, added subsec. (n).

1972—Subsec. (a)(2). Pub. L. 92–261, §8(a), inserted ''or applicants for employment'' after ''his employees''.

Subsec. (c)(2). Pub. L. 92–261, §8(b), inserted ''or applicants for membership'' after ''membership''.

### EFFECTIVE DATE OF 1991 AMENDMENT

Amendment by Pub. L. 102–166 effective Nov. 21, 1991, except as otherwise provided, see section 402 of Pub. L. 102–166, set out as a note under section 1981 of this title.

### SUBVERSIVE ACTIVITIES CONTROL BOARD

Subversive Activities Control Board established by act Sept. 23, 1950, ch. 1024, §12, 64 Stat. 977, and ceased to operate on June 30, 1973.

## § 2000e–3. Other unlawful employment practices

### (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

### (b) Printing or publication of notices or advertisements indicating prohibited preference, limitation, specification, or discrimination; occupational qualification exception

It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to provide apprenticeship or other training by such a joint labor-management committee, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment.

(Pub. L. 88–352, title VII, §704, July 2, 1964, 78 Stat. 257; Pub. L. 92–261, §8(c), Mar. 24, 1972, 86 Stat. 109.)

### AMENDMENTS

1972—Subsec. (a). Pub. L. 92–261, §8(c)(1), inserted provision making it an unlawful employment practice for a joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against the specified individuals.

Subsec. (b). Pub. L. 92–261, §8(c)(2), inserted provisions making prohibitions applicable to joint labor-management committees controlling apprenticeship or other training or retraining, including on-the-job training programs, and notices or advertisements of such joint labor-management committees relating to admission to, or employment in, any program established to provide apprenticeship or other training.

## § 2000e–4. Equal Employment Opportunity Commission

### (a) Creation; composition; political representation; appointment; term; vacancies; Chairman and Vice Chairman; duties of Chairman; appointment of personnel; compensation of personnel

There is hereby created a Commission to be known as the Equal Employment Opportunity Commission, which shall be composed of five members, not more than three of whom shall be members of the same political party. Members of the Commission shall be appointed by the President by and with the advice and consent of the Senate for a term of five years. Any individual chosen to fill a vacancy shall be appointed only for the unexpired term of the member whom he shall succeed, and all members of the Commission shall continue to serve until their successors are appointed and qualified, except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted. The President shall designate one member to serve as Chairman of the Commission, and one member to serve as Vice Chairman. The Chairman shall be responsible on behalf of the Commission for the administrative operations of the Com-

TAB 7:

(Pub. L. 88–352, title VII, §703, July 2, 1964, 78 Stat. 255; Pub. L. 92–261, §8(a), (b), Mar. 24, 1972, 86 Stat. 109; Pub. L. 102–166, title I, §§105(a), 106, 107(a), 108, Nov. 21, 1991, 105 Stat. 1074–1076.)

### REFERENCES IN TEXT

The Subversive Activities Control Act of 1950, referred to in subsec. (f), is title I (§§1–32) of act Sept. 23, 1950, ch. 1024, 64 Stat. 987, which is classified principally to subchapter I (§781 et seq.) of chapter 23 of Title 50, War and National Defense. For complete classification of this Act to the Code, see Tables.

The Controlled Substances Act, referred to in subsec. (k)(3), is title II of Pub. L. 91–513, Oct. 27, 1970, 84 Stat. 1242, which is classified principally to subchapter I (§801 et seq.) of chapter 13 of Title 21, Food and Drugs. For complete classification of this Act to the Code, see Short Title note set out under section 801 of Title 21 and Tables.

The Federal Rules of Civil Procedure, referred to in subsec. (n)(2)(A), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### AMENDMENTS

1991—Subsec. (k). Pub. L. 102–166, §105(a), added subsec. (k).

Subsec. (l). Pub. L. 102–166, §106, added subsec. (l).

Subsec. (m). Pub. L. 102–166, §107(a), added subsec. (m).

Subsec. (n). Pub. L. 102–166, §108, added subsec. (n).

1972—Subsec. (a)(2). Pub. L. 92–261, §8(a), inserted ''or applicants for employment'' after ''his employees''.

Subsec. (c)(2). Pub. L. 92–261, §8(b), inserted ''or applicants for membership'' after ''membership''.

### EFFECTIVE DATE OF 1991 AMENDMENT

Amendment by Pub. L. 102–166 effective Nov. 21, 1991, except as otherwise provided, see section 402 of Pub. L. 102–166, set out as a note under section 1981 of this title.

### SUBVERSIVE ACTIVITIES CONTROL BOARD

Subversive Activities Control Board established by act Sept. 23, 1950, ch. 1024, §12, 64 Stat. 977, and ceased to operate on June 30, 1973.

## § 2000e–3. Other unlawful employment practices

### (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

### (b) Printing or publication of notices or advertisements indicating prohibited preference, limitation, specification, or discrimination; occupational qualification exception

It shall be an unlawful employment practice for an employer, labor organization, employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to print or publish or cause to be printed or published any notice or advertisement relating to employment by such an employer or membership in or any classification or referral for employment by such a labor organization, or relating to any classification or referral for employment by such an employment agency, or relating to admission to, or employment in, any program established to provide apprenticeship or other training by such a joint labor-management committee, indicating any preference, limitation, specification, or discrimination, based on race, color, religion, sex, or national origin, except that such a notice or advertisement may indicate a preference, limitation, specification, or discrimination based on religion, sex, or national origin when religion, sex, or national origin is a bona fide occupational qualification for employment.

(Pub. L. 88–352, title VII, §704, July 2, 1964, 78 Stat. 257; Pub. L. 92–261, §8(c), Mar. 24, 1972, 86 Stat. 109.)

### AMENDMENTS

1972—Subsec. (a). Pub. L. 92–261, §8(c)(1), inserted provision making it an unlawful employment practice for a joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against the specified individuals.

Subsec. (b). Pub. L. 92–261, §8(c)(2), inserted provisions making prohibitions applicable to joint labor-management committees controlling apprenticeship or other training or retraining, including on-the-job training programs, and notices or advertisements of such joint labor-management committees relating to admission to, or employment in, any program established to provide apprenticeship or other training.

## § 2000e–4. Equal Employment Opportunity Commission

### (a) Creation; composition; political representation; appointment; term; vacancies; Chairman and Vice Chairman; duties of Chairman; appointment of personnel; compensation of personnel

There is hereby created a Commission to be known as the Equal Employment Opportunity Commission, which shall be composed of five members, not more than three of whom shall be members of the same political party. Members of the Commission shall be appointed by the President by and with the advice and consent of the Senate for a term of five years. Any individual chosen to fill a vacancy shall be appointed only for the unexpired term of the member whom he shall succeed, and all members of the Commission shall continue to serve until their successors are appointed and qualified, except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted. The President shall designate one member to serve as Chairman of the Commission, and one member to serve as Vice Chairman. The Chairman shall be responsible on behalf of the Commission for the administrative operations of the Com-

TAB 8:

effectuate the transfers provided in this Order, including the transfer of funds, records, property, and personnel.

1–104. This Order shall be effective July 1, 1979.

JIMMY CARTER.

## § 2000e–5. Enforcement provisions

### (a) Power of Commission to prevent unlawful employment practices

The Commission is empowered, as hereinafter provided, to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e–2 or 2000e–3 of this title.

### (b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc.; filing; allegations; notice to respondent; contents of notice; investigation by Commission; contents of charges; prohibition on disclosure of charges; determination of reasonable cause; conference, conciliation, and persuasion for elimination of unlawful practices; prohibition on disclosure of informal endeavors to end unlawful practices; use of evidence in subsequent proceedings; penalties for disclosure of information; time for determination of reasonable cause

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer, employment agency, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer, employment agency, labor organization, or joint labor-management committee (hereinafter referred to as the ''respondent'') within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires. Charges shall not be made public by the Commission. If the Commission determines after such investigation that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge and promptly notify the person claiming to be aggrieved and the respondent of its action. In determining whether reasonable cause exists, the Commission shall accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law pursuant to the requirements of subsections (c) and (d) of this section. If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. Nothing said or done during and as a part of such informal endeavors may be made public by the Commission, its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned. Any person who makes public information in viola-

tion of this subsection shall be fined not more than $1,000 or imprisoned for not more than one year, or both. The Commission shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge or, where applicable under subsection (c) or (d) of this section, from the date upon which the Commission is authorized to take action with respect to the charge.

### (c) State or local enforcement proceedings; notification of State or local authority; time for filing charges with Commission; commencement of proceedings

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a)[1] of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

### (d) State or local enforcement proceedings; notification of State or local authority; time for action on charges by Commission

In the case of any charge filed by a member of the Commission alleging an unlawful employment practice occurring in a State or political subdivision of a State which has a State or local law prohibiting the practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days (provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective day of such State or local law), unless a shorter period is requested, to act under such State or local law to remedy the practice alleged.

### (e) Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system

(1) A charge under this section shall be filed within one hundred and eighty days after the al-

---

[1] So in original. Probably should be subsection ''(b)''.

leged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

(2) For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this subchapter (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

(3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

(B) In addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

**(f) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master**

(1) If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d) of this section, the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) of this section, is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

(2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary

relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.

(3) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

(4) It shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

(5) It shall be the duty of the judge designated pursuant to this subsection to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited. If such judge has not scheduled the case for trial within one hundred and twenty days after issue has been joined, that judge may appoint a master pursuant to rule 53 of the Federal Rules of Civil Procedure.

**(g) Injunctions; appropriate affirmative action; equitable relief; accrual of back pay; reduction of back pay; limitations on judicial orders**

(1) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with rea-

sonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

(2)(A) No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

(B) On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

**(h) Provisions of chapter 6 of title 29 not applicable to civil actions for prevention of unlawful practices**

The provisions of chapter 6 of title 29 shall not apply with respect to civil actions brought under this section.

**(i) Proceedings by Commission to compel compliance with judicial orders**

In any case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under this section, the Commission may commence proceedings to compel compliance with such order.

**(j) Appeals**

Any civil action brought under this section and any proceedings brought under subsection (i) of this section shall be subject to appeal as provided in sections 1291 and 1292, title 28.

**(k) Attorney's fee; liability of Commission and United States for costs**

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

(Pub. L. 88–352, title VII, § 706, July 2, 1964, 78 Stat. 259; Pub. L. 92–261, § 4, Mar. 24, 1972, 86 Stat. 104; Pub. L. 102–166, title I, §§ 107(b), 112, 113(b), Nov. 21, 1991, 105 Stat. 1075, 1078, 1079; Pub. L. 111–2, § 3, Jan. 29, 2009, 123 Stat. 5.)

REFERENCES IN TEXT

This Act, referred to in subsec. (f)(2), means Pub. L. 88–352, July 2, 1964, 78 Stat. 241, known as the Civil Rights Act of 1964, which is classified principally to

subchapters II to IX of this chapter (§ 2000a et seq.). For complete classification of this Act to the Code, see Short Title note set out under section 2000a of this title and Tables.

Rules 65 and 53 of the Federal Rules of Civil Procedure, referred to in subsec. (f)(2), (5), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

Chapter 6 (§ 101 et seq.) of title 29, referred to in subsec. (h), is a reference to act Mar. 23, 1932, ch. 90, 47 Stat. 70, popularly known as the Norris-LaGuardia Act. For complete classification of this Act to the Code, see Tables.

#### AMENDMENTS

2009—Subsec. (e)(3). Pub. L. 111–2 added par. (3).

1991—Subsec. (e). Pub. L. 102–166, § 112, designated existing provisions as par. (1) and added par. (2).

Subsec. (g). Pub. L. 102–166, § 107(b), designated existing provisions as pars. (1) and (2)(A) and added par. (2)(B).

Subsec. (k). Pub. L. 102–166, § 113(b), inserted ''(including expert fees)'' after ''attorney's fee''.

1972—Subsec. (a). Pub. L. 92–261, § 4(a), added subsec. (a). Former subsec. (a) redesignated (b) and amended generally.

Subsec. (b). Pub. L. 92–261, § 4(a), redesignated former subsec. (a) as (b), modified the procedure for the filing and consideration of charges by the Commission, subjected to coverage unlawful employment practices of joint labor-management committees controlling apprenticeship or other training or retraining, including on-the-job training programs, required the Commission to accord substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local law in its determination of reasonable cause, and inserted provision setting forth the time period, after charges have been filed, allowed to the Commission to determine reasonable cause. Former subsec. (b) redesignated (c).

Subsecs. (c), (d). Pub. L. 92–261, § 4(a), redesignated former subsecs. (b) and (c) as (c) and (d), respectively. Former subsec. (d) redesignated (e).

Subsec. (e). Pub. L. 92–261, § 4(a), redesignated former subsec. (d) as (e), extended from ninety to one hundred and eighty days after the occurrence of the alleged unlawful employment practice the time for filing charges under this section and from two hundred and ten to three hundred days the time for filing such charges where the person aggrieved initially instituted proceedings with a State or local agency, and inserted requirement that notice of the charge be served on the respondent within ten days after filing. Former subsec. (e) redesignated (f)(1).

Subsec. (f). Pub. L. 92–261, § 4(a), redesignated former subsec. (e) as par. (1), substituted provisions setting forth the procedure for civil actions where the Commission was unable to secure from the respondents a conciliation agreement to prevent further unlawful employment practices for provisions setting forth the procedure for civil actions where the Commission was unable to obtain voluntary compliance with this subchapter and inserted provisions setting forth the procedure for civil action where the respondent is a government, governmental agency, or political subdivision and the Commission could not secure a conciliation agreement, added par. (2), redesignated former subsec. (f) as par. (3), substituted ''aggrieved person'' for ''plaintiff'', and added pars. (4) and (5).

Subsec. (g). Pub. L. 92–261, § 4(a), inserted provisions which authorized the court to order affirmative action not limited solely to the enumerated affirmative acts and such other equitable relief as deemed appropriate, and provisions which set forth the accrual date for back pay.

Subsecs. (i), (j). Pub. L. 92–261, § 4(b)(1), (2), substituted ''this section'' for ''subsection (e) of this section''.

#### EFFECTIVE DATE OF 2009 AMENDMENT

Pub. L. 111–2, § 6, Jan. 29, 2009, 123 Stat. 7, provided that: ''This Act [amending this section and section 2000e–16 of this title and sections 626, 633a, and 794a of Title 29, Labor, and enacting provisions set out as notes under this section and section 2000a of this title], and the amendments made by this Act, take effect as if enacted on May 28, 2007 and apply to all claims of discrimination in compensation under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.), the Age Discrimination in Employment Act of 1967 (29 U.S.C. 621 et seq.), title I and section 503 of the Americans with Disabilities Act of 1990 [42 U.S.C. 12111 et seq., 12203], and sections 501 and 504 of the Rehabilitation Act of 1973 [29 U.S.C. 791, 794], that are pending on or after that date.''

#### EFFECTIVE DATE OF 1991 AMENDMENT

Amendment by Pub. L. 102–166 effective Nov. 21, 1991, except as otherwise provided, see section 402 of Pub. L. 102–166, set out as a note under section 1981 of this title.

#### EFFECTIVE DATE OF 1972 AMENDMENT

Section 14 of Pub. L. 92–261 provided that: ''The amendments made by this Act to section 706 of the Civil Rights Act of 1964 [this section] shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act [Mar. 24, 1972] and all charges filed thereafter.''

#### FINDINGS

Pub. L. 111–2, § 2, Jan. 29, 2009, 123 Stat. 5, provided that: ''Congress finds the following:

''(1) The Supreme Court in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007), significantly impairs statutory protections against discrimination in compensation that Congress established and that have been bedrock principles of American law for decades. The Ledbetter decision undermines those statutory protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices, contrary to the intent of Congress.

''(2) The limitation imposed by the Court on the filing of discriminatory compensation claims ignores the reality of wage discrimination and is at odds with the robust application of the civil rights laws that Congress intended.

''(3) With regard to any charge of discrimination under any law, nothing in this Act [amending this section and section 2000e–16 of this title and sections 626, 633a, and 794a of Title 29, Labor, and enacting provisions set out as notes under this section and section 2000a of this title] is intended to preclude or limit an aggrieved person's right to introduce evidence of an unlawful employment practice that has occurred outside the time for filing a charge of discrimination.

''(4) Nothing in this Act is intended to change current law treatment of when pension distributions are considered paid.''

#### APPLICATION TO OTHER LAWS

Pub. L. 111–2, § 5(a), (b), Jan. 29, 2009, 123 Stat. 6, provided that:

''(a) AMERICANS WITH DISABILITIES ACT OF 1990.—The amendments made by section 3 [amending this section] shall apply to claims of discrimination in compensation brought under title I and section 503 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq., 12203), pursuant to section 107(a) of such Act (42 U.S.C. 12117(a)), which adopts the powers, remedies, and procedures set forth in section 706 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5).

''(b) REHABILITATION ACT OF 1973.—The amendments made by section 3 shall apply to claims of discrimination in compensation brought under sections 501 and 504 of the Rehabilitation Act of 1973 (29 U.S.C. 791, 794), pursuant to—

''(1) sections 501(g) and 504(d) of such Act (29 U.S.C. 791(g), 794(d)), respectively, which adopt the standards

applied under title I of the Americans with Disabilities Act of 1990 [42 U.S.C. 12111 et seq.] for determining whether a violation has occurred in a complaint alleging employment discrimination; and

''(2) paragraphs (1) and (2) of section 505(a) of such Act (29 U.S.C. 794a(a)) (as amended by subsection (c)).''

## § 2000e–6. Civil actions by the Attorney General

### (a) Complaint

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States by filing with it a complaint (1) signed by him (or in his absence the Acting Attorney General), (2) setting forth facts pertaining to such pattern or practice, and (3) requesting such relief, including an application for a permanent or temporary injunction, restraining order or other order against the person or persons responsible for such pattern or practice, as he deems necessary to insure the full enjoyment of the rights herein described.

### (b) Jurisdiction; three-judge district court for cases of general public importance: hearing, determination, expedition of action, review by Supreme Court; single judge district court: hearing, determination, expedition of action

The district courts of the United States shall have and shall exercise jurisdiction of proceedings instituted pursuant to this section, and in any such proceeding the Attorney General may file with the clerk of such court a request that a court of three judges be convened to hear and determine the case. Such request by the Attorney General shall be accompanied by a certificate that, in his opinion, the case is of general public importance. A copy of the certificate and request for a three-judge court shall be immediately furnished by such clerk to the chief judge of the circuit (or in his absence, the presiding circuit judge of the circuit) in which the case is pending. Upon receipt of such request it shall be the duty of the chief judge of the circuit or the presiding circuit judge, as the case may be, to designate immediately three judges in such circuit, of whom at least one shall be a circuit judge and another of whom shall be a district judge of the court in which the proceeding was instituted, to hear and determine such case, and it shall be the duty of the judges so designated to assign the case for hearing at the earliest practicable date, to participate in the hearing and determination thereof, and to cause the case to be in every way expedited. An appeal from the final judgment of such court will lie to the Supreme Court.

In the event the Attorney General fails to file such a request in any such proceeding, it shall be the duty of the chief judge of the district (or in his absence, the acting chief judge) in which the case is pending immediately to designate a judge in such district to hear and determine the case. In the event that no judge in the district is available to hear and determine the case, the chief judge of the district, or the acting chief judge, as the case may be, shall certify this fact to the chief judge of the circuit (or in his absence, the acting chief judge) who shall then designate a district or circuit judge of the circuit to hear and determine the case.

It shall be the duty of the judge designated pursuant to this section to assign the case for hearing at the earliest practicable date and to cause the case to be in every way expedited.

### (c) Transfer of functions, etc., to Commission; effective date; prerequisite to transfer; execution of functions by Commission

Effective two years after March 24, 1972, the functions of the Attorney General under this section shall be transferred to the Commission, together with such personnel, property, records, and unexpended balances of appropriations, allocations, and other funds employed, used, held, available, or to be made available in connection with such functions unless the President submits, and neither House of Congress vetoes, a reorganization plan pursuant to chapter 9 of title 5, inconsistent with the provisions of this subsection. The Commission shall carry out such functions in accordance with subsections (d) and (e) of this section.

### (d) Transfer of functions, etc., not to affect suits commenced pursuant to this section prior to date of transfer

Upon the transfer of functions provided for in subsection (c) of this section, in all suits commenced pursuant to this section prior to the date of such transfer, proceedings shall continue without abatement, all court orders and decrees shall remain in effect, and the Commission shall be substituted as a party for the United States of America, the Attorney General, or the Acting Attorney General, as appropriate.

### (e) Investigation and action by Commission pursuant to filing of charge of discrimination; procedure

Subsequent to March 24, 1972, the Commission shall have authority to investigate and act on a charge of a pattern or practice of discrimination, whether filed by or on behalf of a person claiming to be aggrieved or by a member of the Commission. All such actions shall be conducted in accordance with the procedures set forth in section 2000e–5 of this title.

(Pub. L. 88–352, title VII, § 707, July 2, 1964, 78 Stat. 261; Pub. L. 92–261, § 5, Mar. 24, 1972, 86 Stat. 107.)

#### AMENDMENTS

1972—Subsecs. (c) to (e). Pub. L. 92–261 added subsecs. (c) to (e).

#### TRANSFER OF FUNCTIONS

Any function of the Equal Employment Opportunity Commission concerning initiation of litigation with respect to State or local government, or political subdivisions under this section, and all necessary functions related thereto, including investigation, findings, notice and an opportunity to resolve the matter without contested litigation, were transferred to the Attorney General, to be exercised by him in accordance with procedures consistent with this subchapter, and with the At-

TAB 9:

GOVERNMENT CODE

TITLE 3. LEGISLATIVE BRANCH

SUBTITLE B. LEGISLATION

CHAPTER 311. CODE CONSTRUCTION ACT

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 311.001.  SHORT TITLE.  This chapter may be cited as the Code Construction Act.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.002.  APPLICATION.  This chapter applies to:
        (1)  each code enacted by the 60th or a subsequent legislature as part of the state's continuing statutory revision program;
        (2)  each amendment, repeal, revision, and reenactment of a code or code provision by the 60th or a subsequent legislature;
        (3)  each repeal of a statute by a code;  and
        (4)  each rule adopted under a code.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.003.  RULES NOT EXCLUSIVE.  The rules provided in this chapter are not exclusive but are meant to describe and clarify common situations in order to guide the preparation and construction of codes.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.004.  CITATION OF CODES.  A code may be cited by its name preceded by the specific part concerned.  Examples of citations are:
        (1)  Title 1, Business & Commerce Code;
        (2)  Chapter 5, Business & Commerce Code;
        (3)  Section 9.304, Business & Commerce Code;
        (4)  Section 15.06(a), Business & Commerce Code;  and
        (5)  Section 17.18(b)(1)(B)(ii), Business & Commerce Code.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1985, 69th Leg., ch. 117, Sec. 13(b), eff. Sept. 1, 1985.

Sec. 311.005.  GENERAL DEFINITIONS.  The following definitions apply unless the statute or context in which the word or phrase is used requires a different definition:

(1)  "Oath" includes affirmation.

(2)  "Person" includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity.

(3)  "Population" means the population shown by the most recent federal decennial census.

(4)  "Property" means real and personal property.

(5)  "Rule" includes regulation.

(6)  "Signed" includes any symbol executed or adopted by a person with present intention to authenticate a writing.

(7)  "State," when referring to a part of the United States, includes any state, district, commonwealth, territory, and insular possession of the United States and any area subject to the legislative authority of the United States of America.

(8)  "Swear" includes affirm.

(9)  "United States" includes a department, bureau, or other agency of the United States of America.

(10)  "Week" means seven consecutive days.

(11)  "Written" includes any representation of words, letters, symbols, or figures.

(12)  "Year" means 12 consecutive months.

(13)  "Includes" and "including" are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1989, 71st Leg., ch. 340, Sec. 1, eff. Aug. 28, 1989.


Sec. 311.006.  INTERNAL REFERENCES.  In a code:

(1)  a reference to a title, chapter, or section without further identification is a reference to a title, chapter, or section of the code; and

(2)  a reference to a subtitle, subchapter, subsection, subdivision, paragraph, or other numbered or lettered unit without further identification is a reference to a unit of the next larger unit of the code in which the reference appears.

Added by Acts 1993, 73rd Leg., ch. 131, Sec. 1, eff. May 11, 1993.


SUBCHAPTER B.  CONSTRUCTION OF WORDS AND PHRASES

Sec. 311.011.  COMMON AND TECHNICAL USAGE OF WORDS.  (a)  Words and phrases shall be read in context and construed according to the rules of grammar and common usage.

(b)  Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.012.  TENSE, NUMBER, AND GENDER.  (a)  Words in the present tense include the future tense.

(b)  The singular includes the plural and the plural includes the singular.

(c)  Words of one gender include the other genders.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.013.  AUTHORITY AND QUORUM OF PUBLIC BODY.  (a)  A grant of authority to three or more persons as a public body confers the authority on a majority of the number of members fixed by statute.

(b)  A quorum of a public body is a majority of the number of members fixed by statute.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.014.  COMPUTATION OF TIME.  (a)  In computing a period of days, the first day is excluded and the last day is included.

(b)  If the last day of any period is a Saturday, Sunday, or legal holiday, the period is extended to include the next day that is not a Saturday, Sunday, or legal holiday.

(c)  If a number of months is to be computed by counting the months from a particular day, the period ends on the same numerical day in the concluding month as the day of the month from which the computation is begun, unless there are not that many days in the concluding month, in which case the period ends on the last day of that month.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.

Sec. 311.015.  REFERENCE TO A SERIES.  If a statute refers to a series of numbers or letters, the first and last numbers or letters are included.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.016.  "MAY," "SHALL," "MUST," ETC.  The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute:
        (1)  "May" creates discretionary authority or grants permission or a power.
        (2)  "Shall" imposes a duty.
        (3)  "Must" creates or recognizes a condition precedent.
        (4)  "Is entitled to" creates or recognizes a right.
        (5)  "May not" imposes a prohibition and is synonymous with "shall not."
        (6)  "Is not entitled to" negates a right.
        (7)  "Is not required to" negates a duty or condition precedent.

Added by Acts 1997, 75th Leg., ch. 220, Sec. 1, eff. May 23, 1997.


SUBCHAPTER C. CONSTRUCTION OF STATUTES

Sec. 311.021.  INTENTION IN ENACTMENT OF STATUTES.  In enacting a statute, it is presumed that:
        (1)  compliance with the constitutions of this state and the United States is intended;
        (2)  the entire statute is intended to be effective;
        (3)  a just and reasonable result is intended;
        (4)  a result feasible of execution is intended;  and
        (5)  public interest is favored over any private interest.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.022.  PROSPECTIVE OPERATION OF STATUTES.  A statute is presumed to be prospective in its operation unless expressly made retrospective.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.

Sec. 311.023.  STATUTE CONSTRUCTION AIDS.  In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

        (1)  object sought to be attained;

        (2)  circumstances under which the statute was enacted;

        (3)  legislative history;

        (4)  common law or former statutory provisions, including laws on the same or similar subjects;

        (5)  consequences of a particular construction;

        (6)  administrative construction of the statute;  and

        (7)  title (caption), preamble, and emergency provision.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


        Sec. 311.024.  HEADINGS.  The heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


        Sec. 311.025.  IRRECONCILABLE STATUTES AND AMENDMENTS.  (a)  Except as provided by Section 311.031(d), if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails.

        (b)  Except as provided by Section 311.031(d), if amendments to the same statute are enacted at the same session of the legislature, one amendment without reference to another, the amendments shall be harmonized, if possible, so that effect may be given to each.  If the amendments are irreconcilable, the latest in date of enactment prevails.

        (c)  In determining whether amendments are irreconcilable, text that is reenacted because of the requirement of Article III, Section 36, of the Texas Constitution is not considered to be irreconcilable with additions or omissions in the same text made by another amendment.  Unless clearly indicated to the contrary, an amendment that reenacts text in compliance with that constitutional requirement does not indicate legislative intent that the reenacted text prevail over changes in the same text made by another amendment, regardless of the relative dates of enactment.

        (d)  In this section, the date of enactment is the date on which the last legislative vote is taken on the bill enacting the statute.

        (e)  If the journals or other legislative records fail to disclose which of two or more bills in conflict is latest in date of enactment, the

date of enactment of the respective bills is considered to be, in order of priority:

       (1)   the date on which the last presiding officer signed the bill;

       (2)   the date on which the governor signed the bill;  or

       (3)   the date on which the bill became law by operation of law.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1989, 71st Leg., ch. 340, Sec. 2, eff. Aug. 28, 1989;  Acts 1997, 75th Leg., ch. 220, Sec. 2, eff. May 23, 1997.


    Sec. 311.026.  SPECIAL OR LOCAL PROVISION PREVAILS OVER GENERAL.  (a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

    (b)  If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


    Sec. 311.027.  STATUTORY REFERENCES.  Unless expressly provided otherwise, a reference to any portion of a statute or rule applies to all reenactments, revisions, or amendments of the statute or rule.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.  Amended by Acts 1993, 73rd Leg., ch. 131, Sec. 2, eff. May 11, 1993.


    Sec. 311.028.  UNIFORM CONSTRUCTION OF UNIFORM ACTS.  A uniform act included in a code shall be construed to effect its general purpose to make uniform the law of those states that enact it.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


    Sec. 311.029.  ENROLLED BILL CONTROLS.  If the language of the enrolled bill version of a statute conflicts with the language of any subsequent printing or reprinting of the statute, the language of the enrolled bill version controls.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.

Sec. 311.030.  REPEAL OF REPEALING STATUTE.  The repeal of a repealing statute does not revive the statute originally repealed nor impair the effect of any saving provision in it.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.031.  SAVING PROVISIONS.  (a)  Except as provided by Subsection (b), the reenactment, revision, amendment, or repeal of a statute does not affect:

(1)  the prior operation of the statute or any prior action taken under it;

(2)  any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred under it;

(3)  any violation of the statute or any penalty, forfeiture, or punishment incurred under the statute before its amendment or repeal;  or

(4)  any investigation, proceeding, or remedy concerning any privilege, obligation, liability, penalty, forfeiture, or punishment;  and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

(b)  If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

(c)  The repeal of a statute by a code does not affect an amendment, revision, or reenactment of the statute by the same legislature that enacted the code.  The amendment, revision, or reenactment is preserved and given effect as part of the code provision that revised the statute so amended, revised, or reenacted.

(d)  If any provision of a code conflicts with a statute enacted by the same legislature that enacted the code, the statute controls.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.032.  SEVERABILITY OF STATUTES.  (a)  If any statute contains a provision for severability, that provision prevails in interpreting that statute.

(b)  If any statute contains a provision for nonseverability, that provision prevails in interpreting that statute.

(c)  In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

Acts 1985, 69th Leg., ch. 479, Sec. 1, eff. Sept. 1, 1985.


Sec. 311.034.  WAIVER OF SOVEREIGN IMMUNITY.  In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.  In a statute, the use of "person," as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction.  Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.

Added by Acts 2001, 77th Leg., ch. 1158, Sec. 8, eff. June 15, 2001. Amended by:
Acts 2005, 79th Leg., Ch. 1150 (H.B. 2988), Sec. 1, eff. September 1, 2005.


Sec. 311.035.  CONSTRUCTION OF STATUTE OR RULE INVOLVING CRIMINAL OFFENSE OR PENALTY.  (a) In this section, "actor" and "element of offense" have the meanings assigned by Section 1.07, Penal Code.
(b)  Except as provided by Subsection (c), a statute or rule that creates or defines a criminal offense or penalty shall be construed in favor of the actor if any part of the statute or rule is ambiguous on its face or as applied to the case, including:
(1)  an element of offense; or
(2)  the penalty to be imposed.
(c)  Subsection (b) does not apply to a criminal offense or penalty under the Penal Code or under the Texas Controlled Substances Act.
(d)  The ambiguity of a part of a statute or rule to which this section applies is a matter of law to be resolved by the judge.

Added by Acts 2015, 84th Leg., R.S., Ch. 1251 (H.B. 1396), Sec. 4, eff. September 1, 2015.

Sec. 311.036.  CONSTRUCTION OF ABORTION STATUTES.  (a)  A statute that regulates or prohibits abortion may not be construed to repeal any other statute that regulates or prohibits abortion, either wholly or partly, unless the repealing statute explicitly states that it is repealing the other statute.

(b)  A statute may not be construed to restrict a political subdivision from regulating or prohibiting abortion in a manner that is at least as stringent as the laws of this state unless the statute explicitly states that political subdivisions are prohibited from regulating or prohibiting abortion in the manner described by the statute.

(c)  Every statute that regulates or prohibits abortion is severable in each of its applications to every person and circumstance.  If any statute that regulates or prohibits abortion is found by any court to be unconstitutional, either on its face or as applied, then all applications of that statute that do not violate the United States Constitution and Texas Constitution shall be severed from the unconstitutional applications and shall remain enforceable, notwithstanding any other law, and the statute shall be interpreted as if containing language limiting the statute's application to the persons, group of persons, or circumstances for which the statute's application will not violate the United States Constitution and Texas Constitution.

Added by Acts 2021, 87th Leg., R.S., Ch. 62 (S.B. 8), Sec. 5, eff. September 1, 2021.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Karel Macias on behalf of Brianna Krominga
Bar No. 24103252
karel.macias@oag.texas.gov
Envelope ID: 101328393
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Appellants Corrected Brief wt appx
Status as of 5/28/2025 12:45 PM CST

Associated Case Party: JAMES MCMERCHANT

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Ali Crocker | 24098868 | ali@cralawfirm.com | 5/28/2025 12:20:42 PM | SENT |

Associated Case Party: University of Texas at Arlington

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| karel macias | | karel.macias@oag.texas.gov | 5/28/2025 12:20:42 PM | SENT |
| Brianna Krominga | | brianna.krominga@oag.texas.gov | 5/28/2025 12:20:42 PM | SENT |